IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD BARROW,**                        Case No. 1:16 CV 2076

      Petitioner,                              Judge Dan Aaron Polster

      v.                                      Magistrate Judge James R. Knepp, II

**WARDEN ALAN LAZAROFF,**

      Respondent.                             REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* petitioner Richard Barrow ("Petitioner"), a prisoner in state custody, filed a petition

seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Alan

Lazaroff, Warden of the Mansfield Correctional Institution, ("Respondent") filed an Answer (Doc.

8) and Petitioner filed a Reply (Doc. 12). Respondent filed a Sur-reply. (Doc. 17). The district

court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the

undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document

entry dated August 23, 2016). For the reasons discussed below, the undersigned recommends the

Petition be denied.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by

a state court are presumed correct and can only be contravened if the habeas petitioner shows, by

clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. §

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state

court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

The Ohio Eighth District Court of Appeals, Cuyahoga County, set forth the following findings of fact:

{¶ 2} Before trial, Barrow pleaded guilty to attempted murder and felonious assault with a one-year gun specification, with the understanding the court would merge the counts as allied offenses. Barrow pleaded guilty on the first day his case was set for trial. During the colloquy, although claiming satisfaction with his attorney's representation, Barrow seemed dissatisfied with the plea because his attorney would not get affidavits from witnesses for trial. After a brief discussion and the court informing Barrow that affidavits were unacceptable for trial, Barrow agreed to plead guilty. After leaving the court, Barrow seemed even more dissatisfied with his attorney's representation, and the court reconvened the change of plea hearing. Barrow once again agreed to plead guilty.

{¶ 3} Thereafter, Barrow filed a pro se motion to withdraw his plea and seek new counsel. The trial court granted the motion, allowing Barrow's first attorney to withdraw, and appointed new counsel to represent Barrow at trial. This led to trial on four counts: one for attempted murder with one- and three-year firearm specifications, two for felonious assault with one- and three-year firearm specifications, and one for having a weapon while under disability. Barrow waived the jury for the final count.

{¶ 4} The following facts emerged from the trial. On July 23, 2013, a dispute between neighbors erupted. It was the victim's family pitted against the family of Barrow's friends. The victim approached Barrow's friend Justin, who lived next door to the victim's mother and siblings. Justin was with Barrow's brother. Barrow was dating Justin's sister. The victim approached Justin and his friend with the intent to inquire about their association with Barrow and about an earlier incident involving Barrow and the victim's brother. The victim believed that Barrow assaulted his little brother the day before or the morning of the July 23 altercation. The assault and altercation stemmed from an earlier incident in which Barrow accused the victim's family of stealing another firearm.

{¶ 5} A week earlier, Barrow accused the victim's family of stealing the firearm based on the word of a three-year-old child. Barrow apparently confronted the victim's family in their house. Barrow did not live in the neighboring residence. After accusing the victim's family, Barrow retreated to his car, parked in the neighboring driveway, and grabbed a gun. His girlfriend restrained him, but not before Barrow warned the victim's family to return the missing gun "or else."

{¶ 6} During the dispute on July 23, Justin was overheard calling someone after discussing Barrow's involvement in the assault on the victim's brother. While on the phone, Justin relayed the fact that the victim was asking for whomever Justin was calling. Shortly thereafter, Barrow arrived. Barrow was known in the neighborhood under the pseudonym "G." Barrow immediately confronted the

2

victim with a handgun aimed at the victim's head. The victim attempted to redirect the muzzle away from his face, but Barrow pulled the trigger and shot the victim in the shoulder.

{¶ 7} During the trial, three fact witnesses and two investigating police officers testified. One of the witnesses, Justin's grandmother, has psychological issues for which she receives medication. Her testimony was largely consistent with the victim's and his mother's, although she did not identify Barrow specifically. When Barrow approached the victim, she assumed it was Barrow from his demeanor and the fact he was walking with her granddaughter. She later clarified that she was unable to identify the shooter as Barrow. The victim and his mother had their own credibility issues. There were slight inconsistencies in some versions of the events, and the victim claimed he did not use drugs, although he later admitted to smoking marijuana. Barrow's trial counsel cross-examined all the witnesses regarding the credibility issues.

{¶ 8} All the witnesses identified Barrow from a photo array, although the victim and his mother did not provide the identification until three weeks later. Although the victim claimed he told the treating medical teams that Barrow was the shooter, the victim's medical records noted that the victim "does not know the [shooter] but recognized him as the person who jumped [the victim's] brother yesterday." During cross-examination, the victim indicated that he told the hospital that he did not know Barrow's given name, but identified him pursuant to his street name. Further, the responding police officer testified that upon arriving, it was determined that Barrow was the suspect, again being identified under his street name.

{¶ 9} Barrow was convicted of all charges. The trial court merged the felonious assault counts into the attempted murder and sentenced Barrow to six years of imprisonment for attempted murder and imposed three years on the firearm specification, to be served consecutively. The court imposed a one-year sentence on the count of having a weapon while under disability, to be served concurrently.

*State v. Barrow*, 2015 WL 628358 (Ohio Ct. App.) ("*Barrow I*").

## PROCEDURAL HISTORY

<u>State Court Conviction</u>

On August 21, 2013, a Cuyahoga County Grand Jury issued an indictment charging Petitioner with one count of attempted murder in violation of Ohio Revised Code §§ 2923.02/ 2903.02(A), with one and three year firearm specifications; two counts of felonious assault in violation of Ohio Revised Code §§ 2903.11(A)(1) & (2), with one and three year firearm specifications; and one count of having a weapon under disability in violation of Ohio Revised

Code § 2923.13(A)(3). (Ex. 1, Doc. 8-1, at 4-6). Through counsel, Petitioner pleaded not guilty to the charges. (Ex. 2, Doc. 8-1, at 7). At the State's request, the indictment was amended to delete both firearm specifications from the attempted murder charge, and delete the one-year specification from the felonious assault charges. *Id*. Petitioner then withdrew his not guilty plea, and pleaded guilty to amended counts one and two. *Id*. The trial court accepted his guilty plea, and found him guilty. *Id*. Counts three and four were *nolled*. *Id*.

Prior to sentencing, Petitioner, *pro se*, moved to withdraw his guilty plea and disqualify his counsel. (Exs. 3 & 4, Doc. 8-1, at 8-10). The State opposed the motions. (Ex. 5, Doc. 8-1, at 12). After a hearing, the court granted Petitioner's motions and appointed new counsel. (Ex. 6, Doc. 8-1, at 37). Petitioner waived his right to a jury on count four – having a weapon under disability, and proceeded to trial on the remaining three counts. (Ex. 7, Doc. 8-1, at 38). A Cuyahoga County jury found him guilty on all counts. (Ex. 8, Doc. 8-1, at 39). At Petitioner's April 30, 2014 sentencing hearing, the trial court merged the felonious assault and attempted murder courts as allied offenses of similar import, as well as the firearm specifications. (Ex. 10, Doc. 8-1, at 41). Petitioner was ordered to serve an aggregate term of nine years imprisonment. *Id*.

Direct Appeal

Represented by new counsel, Petitioner filed a timely notice of appeal to the Eighth District Court of Appeals. (Ex. 11, Doc. 8-1, at 43). In his brief, Petitioner raised two assignments of error:

1. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2. THE STATE'S EVIDENCE WAS NOT SUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT WAS GUILTY OF ATTEMPTED MURDER PURSUANT TO R.C. 2903.02(A).

(Ex. 12, Doc. 8-1, at 48). The State filed a brief in response. (Ex. 13, Doc. 8-1, at 72). On February 12, 2015, the Court of Appeals affirmed the judgment of the trial court. (Ex. 14, Doc. 8-1, at 102); *Barrow I*, 2015 WL 628358.

Petitioner, *pro se*, filed a timely notice of appeal to the Ohio Supreme Court. (Ex. 15, Doc. 8-1, at 104). In his memorandum in support of jurisdiction, Petitioner raised one proposition of law:

1. Evidence was insufficient to affirm a conviction and appellate court abused its discretion.

(Ex. 16, Doc. 8-1, at 118). On June 24, 2015, the Ohio Supreme Court declined jurisdiction and dismissed the appeal. (Ex. 17, Doc. 8-1, at 136).

Petition for Post-Conviction Relief

On November 10, 2014, while his direct appeal was pending, Petitioner, *pro se*, filed a petition for post-conviction relief. (Ex. 18, Doc. 8-1, at 137). In it, he raised two grounds for relief:

1. PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO ADEQUATEL[Y] RESEARCH, INVESTIGATE, LOCATE, INTERVIEW, AND SUBPOENA WITNESSES.

2. PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL FAILED TO PRESENT EXCULPATORY EVIDENCE TO JURORS ATTENTION DURING TRIAL LITIGATIONS AND CROSS EXAMINATION FOR METHODS OF IMPEACHMENT AS WELL AS ARGUE ADMISSABILITY OF EVIDENCE THROUGH NEGLECTION [SIC] OF A FULL INVESTIGATION.

*Id*. at 152-53. On March 12, 2015, the trial court denied Petitioner's post-conviction petition. (Ex. 19, Doc. 8-1, at 162). Petitioner did not appeal this decision.

<u>Rule 26(B) Application for Reopening</u>

On April 27, 2015, Petitioner, *pro se*, filed an Ohio Appellate Rule 26(B) application for reopening. (Ex. 20, Doc. 8-1, at 171). In it, he alleged his appellate counsel was ineffective for failing to raise two assignments of error on direct appeal:

1. Prosecutorial misconduct. During opening statements, the state improperly vouched for and improperly admitted other acts evidence which was in conflict with Evid.R.404(B). Also during opening statements, the state made unfairly prejudicial, misleading remarks to the jury concerning Appellant's guilt, that were outside of the record, thereby violating Appellant's right to fair trial, due process and equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

2. Ineffective assistance of counsel. Trial counsel failed to object to other acts testimony/unfair prejudice and file a motion for mistrial, thereby violating Appellant's right to a fair trial, right to effective assistance of counsel, right to due process and equal protection of the law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

(Ex. 21, Doc. 8-1, at 173, 176). The State filed a memorandum in opposition. (Ex. 21, Doc. 8-1, at 201). On November 2, 2015, the Eighth District Court of Appeals denied the application. (Ex. 22, Doc. 8-1, at 211); *State v. Barrow*, 2015 WL 6796756 (Ohio Ct. App.) ("*Barrow II*"). Petitioner did not appeal to the Ohio Supreme Court.

<u>Motion for Leave to File a Motion for a New Trial</u>

On June 29, 2015, Petitioner, *pro se*, filed a Motion for Leave to File Motion for New Trial. (Ex. 23, Doc. 8-1, at 220). The trial court denied the Motion. (Ex. 24, Doc. 8-1, at 232). Petitioner filed a timely notice of appeal to the Eighth District Court of Appeals. (Ex. 25, Doc. 8-1, at 233). Petitioner filed a brief in support asserting one assignment of error:

1. Trial court abuse of discretion: trial court abused its discretion by denying Appellant's motion for leave to file motion for new trial pursuant to Criminal Rule 33(B), without conducting an evidentiary hearing, without considering all files, documents and court reporter transcripts included, without considering the sworn affidavit included within the motion or being sufficiently adequate, comprehensive in the findings of facts and conclusions of law which violated

Appellant's right to a fair trial, protection from cruel and unusual punishment and right to due process and equal protection of the law as guaranteed by the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

(Ex. 27, Doc. 8-1, at 244). The State filed a brief in opposition. (Ex. 28, Doc. 8-1, at 268). On May 5, 2016, the Eighth District Court of Appeals affirmed the judgment of the trial court. (Ex. 29, Doc. 8-1, at 279). Petitioner did not appeal to the Ohio Supreme Court.

## FEDERAL HABEAS CORPUS

Petitioner filed a *pro se* Petition with the United States District Court on August 18, 2016. (Doc. 1). In it, Petitioner raises four grounds for relief:

**GROUND ONE**: The State's evidence was insufficient to establish beyond a reasonable doubt that petitioner was guilty of attempted murder pursuant to R.C. 2903.02(A).

**GROUND TWO**: Prosecutorial misconduct during opening statements, the state improperly admitted other acts evidence which was in conflict with Evid.R.404(B), during opening statements the state made unfair, prejudicial, misleading remarks concerning petitioner's guilt that were outside the record, violating his right to a fair trial, due process and equal protection.

**GROUND THREE**: Ineffective assistance of counsel at trial for failing to object to other acts testimony/unfair prejudice and for failing to file a motion for mistrial violating petitioner's right to a fair trial, right to effect[ive] assistance of counsel, due process and equal protection of law.

**GROUND FOUR**: The Petitioner is denied his constitutional right to effective assistance of appellate counsel on direct appeal when counsel omits raising errors that could have [affected] the outcome of the appeal or at least not caused them to be procedurally defaulted.

(Doc. 1, at 2-9)[1].

---

1. Attachments A through F to the Petition contain factual statements in support of each ground for relief. *See* Doc. 1-1.

7

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

Respondent contends Grounds Two, Three, and Four are procedurally defaulted due to Petitioner's failure to present them to all levels of Ohio courts. (Doc. 8, at 11). Respondent further asserts Ground One is meritless and the Petition should be denied. *Id.* at 19. Petitioner contends he can overcome any default by a showing of cause and prejudice, and his remaining claim has merit. (Doc. 12, at 1). For the reasons outlined below, the undersigned recommends the Petition be denied because Ground Two through Four are procedurally defaulted, and Ground One is meritless.

Exhaustion and Procedural Default

Before seeking a writ of habeas corpus in federal court, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction or sentence. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). The purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

To properly exhaust state remedies, the petitioner must "fairly present" a claim in each of the appropriate state courts, including a state supreme court, in a procedurally appropriate manner. *O'Sullivan*, 526 U.S. at 845. In Ohio, this requires direct and delayed appeals to the Ohio Court of Appeals and the Supreme Court of Ohio. *See Allen v. Perini*, 424 F.2d 134, 140 (6th Cir. 1970).

"It is not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). The legal and factual "substance" of the federal claim must have been presented to the state courts. *Id*. The claim to the state courts must be presented as a federal constitutional claim, not merely as an issue arising under state law. *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

The failure to properly present a federal ground to the state courts constitutes procedural default or waiver barring federal habeas corpus review. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996). When the petitioner fails to fairly present to the state courts the claim on which he seeks relief in federal court, and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *O'Sullivan*, 526 U.S. at 853–54.

If the State argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986).

10

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir.2004) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)).

*Grounds Two and Three*

In Grounds Two and Three, Petitioner asserts ineffective assistance of trial counsel, and prosecutorial misconduct. (Doc. 1, at 6-7). These claims are based on the trial record. Under Ohio law, claims based on the trial record must be raised on direct appeal, otherwise, *res judicata* bars their litigation in subsequent state proceedings. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000). Here, Petitioner failed to raise these claims on direct appeal to the Eighth District Court of Appeals. *See* Ex. 12, Doc. 8-1, at 48 (raising claims regarding sufficiency, and manifest weight, of the evidence). To the Ohio Supreme Court, Petitioner only raised a single issue regarding

11

sufficiency of the evidence. *See* Ex. 16, Doc. 8-1, at 118. By not raising the issues in Grounds Two and Three on direct appeal, Petitioner failed to complete one round of state appellate review as required for consideration of his constitutional claims in this Court. *See Caver v. Straub,* 349 F.3d. 340, 346 (6th Cir. 2003). Because they were based on the trial record, any attempt to raise them now would be barred by *res judicata*. *Seymour*, 224 F. 3d at 555. Therefore, these claims are procedurally defaulted.

In his Rule 26(B) application to reopen, Petitioner raised the ineffective assistance of trial counsel issue contained in Ground Three. *See* Ex. 20, Doc. 8-1, at 173, 176. However, as noted above, such claims must be raised on direct appeal, otherwise, *res judicata* bars their litigation in subsequent state proceedings. *Seymour*, 224 F.3d at 555. A Rule 26(B) application is not as broad as a direct appeal. The only claims which may be raised on a Rule 26(B) are those surrounding ineffective assistance of *appellate* counsel. A Rule 26(B) application is therefore not a mechanism for "bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place." *Stojetz v. Ishee,* 389 F. Supp. 2d. 858, 899 (S.D. Ohio 2005). Thus, Petitioner is unable to use his Rule 26(B) application to preserve his underlying prosecutorial misconduct and trial counsel issues here.

In sum, the undersigned finds Grounds Two and Three are procedurally defaulted. These claims may therefore not be considered by this court unless Petitioner can show cause and prejudice or a miscarriage of justice.

*Cause and Prejudice*

Here, Petitioner has not argued cause and prejudice to overcome the procedural default of Grounds Two and Three. Petitioner has not provided cause to overcome his failure to raise these claims on direct appeal, but presents an argument for cause to overcome the default of the

ineffective assistance of appellate counsel claim itself. As noted above, an ineffective assistance of appellate counsel claim does not preserve the underlying claims. *Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir.2008) ("bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review"). Moreover, while a fairly presented and valid claim of ineffective assistance of appellate counsel can serve as cause to overcome a procedural default, *Goldberg v. Money,* 692 F.3d 534, 537 (6th Cir. 2012) (citing *Edwards v. Carpenter*, 529 U.S. 446, 456 (2000)), as discussed below, Petitioner has not shown prejudice to overcome the default of his claim. Therefore, the notice-filing issue of his Supreme Court appeal outlined below can only serve as cause to explain the procedural default in Ground Four – not Grounds Two and Three. And, because the undersigned finds no prejudice below, the notice-filing issue cannot serve as prejudice here.

Ground Four

In his fourth ground for relief, Petitioner contends his appellate counsel was ineffective for failing to "rais[e] errors that could have [affected] the outcome of the appeal or at least not caused them to be procedurally defaulted." (Doc. 1, at 9).

Petitioner properly raised the issue presented in Ground Four—ineffective assistance of appellate counsel—in his Rule 26(B) application for reopening. *See* Ex. 21, Doc. 8-1, at 173, 176. However, Petitioner failed to appeal the Eighth District Court of Appeals' denial of this claim to the Ohio Supreme Court. Again, as outlined above, Petitioner failed to complete a full round of state appellate review on the issue by not presenting it to the Ohio Supreme Court. *See Caver,* 349 F.3d. at 346; *O'Sullivan,* 526 U.S. at 845. Thus, the undersigned finds Ground Four is also procedurally defaulted.

*Cause and Prejudice – Ground Four*

Petitioner asserts he can overcome the procedural default of Ground Four by demonstrating cause and prejudice.

As cause, Petitioner argues Ground Four was not presented to the highest court in Ohio in an appeal of his Rule 26(B) application because the Eighth District Court of Appeals failed to notify him of its November 2, 2015 ruling. (Doc. 12, at 3-4). Thus, Petitioner argues, he did not submit an appeal to the Ohio Supreme Court because, by the time he realized the Eighth District Court of Appeals rendered a decision, the 45-day deadline had passed. *Id*. at 3. In support, Petitioner submits prison mail logs (Doc. 11-1, at 4) and notarized correspondence with the clerk of the Eighth District Court of Appeals (Doc. 11-1, at 1-2).[2] Through written correspondence, Petitioner attempted to check on the status of his Rule 26(B) application on December 8, 2015. (Doc. 11-1, at 1). According to the prison mail log, Petitioner received a copy of his Rule 26(B) disposition from the Court of Appeals on December 22, 2015 – three days after the 45-day appeal deadline to the Ohio Supreme Court passed. *Id*. at 4.

The Sixth Circuit has concluded such a lack of notice may serve as cause to overcome a procedural default. In *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), neither Petitioner nor his attorney received formal notice of the state court's order denying his post-conviction appeal.

---

2. The Court determines a limited expansion of the record is necessary in this case to consider these documents. In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that a federal court's review under 28 U.S.C. § 2254 is limited to the factual record that was before the state court. However, a court may expand the record for other limited purposes not pertaining to the merits of the petitioner's claims. *Id; Moore v. Mitchell,* 708 F.3d 760,784 (6th Cir. 2013) ("Expansion of the record can assist the district court in deciding other issues besides the merits of the claim."). Here, Petitioner would not be able to establish cause to overcome the procedural default without presenting these records to the Court for review.  *Sanders v. White*, 2015 WL 4394169 at *11 (N.D. Ohio) (a district court may consider "new" evidence to determine whether cause and prejudice exists to excuse a procedural default).

14

The Sixth Circuit found this procedural error was outside Petitioner's control, and established cause to excuse the procedural default resulting from Petitioner's failure to timely appeal denial of the petition. *Id*. As noted above, demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla,* 370 F.3d at 498 (quoting *Murray,* 477 U.S. at 488). In light of the circumstances and evidence presented in support, the undersigned finds Petitioner has demonstrated cause to overcome the procedural default of Ground Four.

Next, the Court turns to whether Petitioner has shown prejudice from the default. For the following reasons, the undersigned concludes that Petitioner has not met his burden and recommends Ground Four be denied as procedurally defaulted.

In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668 (1984)). It is important to note that the test applies to appellate counsel. *Id*; *Smith v. Robbins,* 528 U.S. 259, 285 (2000); *Parks v. Bobby,* 545 F. App'x 478, 481 (6th Cir. 2013); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* . . . there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default."). An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel

15

was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000).

Importantly, the failure to raise an underlying claim in an appeal which would have been unsuccessful is not ineffective assistance of appellate counsel. *Meek v. Bergh,* 526 F. App'x 530, 534 (6th Cir. 2013). "Counsel's performance is strongly presumed to be effective." *McFarland v. Yukins,* 356 F.3d 688,710 (6th Cir. 2004) (quoting *Scott v. Mitchell,* 209 F.3d 854, 880 (6th Cir. 2000)). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel "ignored issues [which] are clearly stronger than those presented." *Smith,* 528 U.S. at 288 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)). Establishing prejudice for ineffective assistance of counsel likewise establishes prejudice for purposes of cause and prejudice. *Joseph v. Coyle*, 469 F.3d 441, 462 (6th. Cir. 2006). Therefore, if Petitioner cannot show prejudice from the underlying ineffective assistance of counsel claim, he cannot show prejudice for the purpose of cause and prejudice to overcome a default. *Id*.

In his Rule 26(B) application, Petitioner asserted his appellate counsel was deficient for failing to raise two issues:

1. Prosecutorial misconduct. During opening statements, the state improperly vouched for and improperly admitted other acts evidence which was in conflict with Evid.R.404(B). Also during opening statements, the state made unfairly prejudicial, misleading remarks to the jury concerning Appellant's guilt, that were outside of the record, thereby violating Appellant's right to fair trial, due process and equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

2. Ineffective assistance of counsel. Trial counsel failed to object to other acts testimony/unfair prejudice and file a motion for mistrial, thereby violating Appellant's right to a fair trial, right to effective assistance of counsel, right to due process and equal protection of the law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

(Ex. 21, Doc. 8-1, at 173, 176).

16

In its denial of Petitioner's Rule 26(B) application, the Eighth District Court of Appeals

rejected Petitioner's claims:

{¶ 9} Barrow complains that the prosecutor improperly introduced "other acts" evidence—i.e., the threat to return the firearm "or else" while brandishing another gun and "jumping" Herbert's little brother—in violation of Evid.R. 404(B) to inflame the jury with irrelevant evidence about his bad character. Evid.R. 404(B) provides in pertinent part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In the instant case, the evidence of the accusation of the stolen firearm, the threat to return the missing property "or else," and the "jumping" of the younger brother is evidence of motive and intent to kill. The latter is an essential element of attempted murder. Indeed, this court so ruled in its opinion. In analyzing the sufficiency of the evidence argument, this court recounted the threat, the assault on the younger brother, and pointing the gun at Herbert's head and concluded that "[t]he jury was free to infer that Barrow intended to cause the death of the victim based on Barrow's threat and subsequent actions." *Barrow,* 2015–Ohio–525, ¶ 17. Accordingly, Barrow's argument is unfounded, and appellate counsel rejected it in the exercise of professional judgment.

{¶ 10} Barrow's second argument is that his trial counsel was ineffective for not objecting to a witness calling him a "pimp." Cheyenne's grandmother testified for the state and during her testimony called Barrow "Cheyenne's pimp." Barrow argues that an elderly Caucasian woman calling a young black man a "pimp" would necessarily inflame the passions of the jury. However, on both direct and cross-examination she clarified her meaning that a "pimp" is a man who lets a young woman do what she should not do. Thus, she was not necessarily saying that Barrow was a purveyor of prostitution. Moreover, Barrow's trial counsel had a standing objection to all of her testimony. The grandmother admitted in a voir dire hearing that she hears voices other people cannot hear, that she has conversations with her deceased father, and that she has been prescribed medication for mental illness that she cannot afford. In light of these revelations, defense counsel objected to her being called as a witness, and the judge granted a standing objection to all of her testimony. (Tr. 108.) Furthermore, appellate counsel did incorporate this argument into his manifest weight of the evidence argument. "The introduction of [the grandmother's] testimony did nothing more than to confuse the jury and prejudice the Appellant. From the onset of her testimony she continually referred to the Appellant as a pimp; although she gave no concrete rationale for that assessment." (Appellant's brief pg. 19.) Thus, appellate counsel submitted that the grandmother's characterization contributed to the jury losing its way. Following the

> admonition of the United States Supreme Court, this court will not second-guess
> appellate counsel's professional judgment to incorporate an argument as part of a
> larger argument. Finally, after reviewing the record, especially the grandmother's
> testimony, the failure to raise a specific objection to that testimony does not
> undermine this court's confidence in the verdict.

*Barrow II*, 2015 WL 6796756; (Ex. 22, Doc. 8-1, at 216).

The appellate court found Petitioner's first assignment of error – prosecutorial misconduct – was without merit. *Id.* at ¶ 9. The court found the prosecutor properly introduced evidence of the stolen firearm, and the "or else" threat made by Petitioner before the assault. *Id.* In analyzing the statement's admissibility under Evidence Rule 404(B), the court determined the evidence spoke to motive – an essential element of attempted murder. *Id.* Thus, the court found no error in the statement's admission and found appellate counsel could have rejected Petitioner's argument "in the exercise of professional judgment". As noted above, there is a strong deference to the professional judgment of appellate counsel and what arguments he or she chooses to pursue or abandon. *See Jones*, 463 U.S. at 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

The record here fails to establish appellate counsel was ineffective for failing to raise a prosecutorial misconduct issue. Further, the Ohio court's determination on the issue was not an unreasonable application of federal law. Thus, the undersigned finds Petitioner has failed to establish he was prejudiced by the omission.

The court also found Petitioner's second assignment of error – trial counsel's failure to object to allegedly prejudicial statements – lacked merit. *Barrow II*, 2015 WL 6796756 at ¶ 10. The prejudicial statements at trial surround a witness referring to Petitioner as a "pimp" during her testimony. *Id.* As the court pointed out, trial counsel objected to that witness being called, and also

objected during her testimony. *Id*. Perhaps most striking, appellate counsel actually incorporated these arguments into the manifest weight of the evidence argument in his appellate brief. *Id*.; (Ex. 11, Doc. 8-1, at 64-65). As it did with the first assignment of error, the court again determined it would not second-guess appellate counsel's professional judgment. *Barrow II*, 2015 WL 6796756 at ¶ 10.

Again, the record here fails to establish appellate counsel was ineffective. In this case, appellate counsel did raise the issue – albeit not to Petitioner's satisfaction. For these reasons, the undersigned finds Petitioner has also failed to establish he was prejudiced by this omission.

In sum, the undersigned finds Ground Four is procedurally defaulted, and Petitioner has cause to overcome the default. However, Petitioner has failed to show he was prejudiced by appellate counsel's failure to raise these claims on direct appeal. As such, the undersigned recommends Ground Four of the Petition be denied.

Ground One

In Ground One, Petitioner argues the evidence presented by the State was insufficient to establish, beyond a reasonable doubt, that he was guilty of attempted murder pursuant to Ohio Revised Code § 2903.02(A). (Doc. 1, at 5). Respondent asserts this ground for relief is without merit, and the State court's determination on the issue is entitled to AEDPA deference. (Doc. 8, at 19). For the reasons outlined below, the undersigned finds Ground One is meritless, and recommends this portion of the Petition be denied.

The standard for sufficiency of evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the

responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326. In applying this standard, the federal court is bound by the substantive elements of the criminal offense as defined by state law. *Id.* at 324 n.16. Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

Further, it is important to note the double deference applicable; first, the deference accorded to the trier of fact's verdict by *Jackson*; and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also Brown*, 567 F.3d at 205 (finding even if a rational trier of fact could not have found

petitioner guilty, the habeas court must defer to the state appellate court's sufficiency determination so long as it is reasonable). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)); *see also Cavazos v. Smith*, 565 U.S. 1, 4 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").

Here, Petitioner challenges the sufficiency of the evidence to support his attempted murder conviction under Ohio Revised Code §§ 2923.02/2903.02(A). (Doc. 1, at 5). Under Ohio law, a person "attempts" a crime when he "purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, [] engage in conduct that, if successful, would constitute or result in the offense." O.R.C. § 2923.02(A). A person commits the offense of murder in Ohio when he "purposely cause[s] the death of another . . . ." O.R.C. § 2903.02(A).

The Eighth District Court of Appeals addressed the sufficiency of the evidence underlying Petitioner's attempted murder conviction as follows:

> {¶ 13} In his second assignment of error, Barrow claims his conviction is against the sufficiency of the evidence because the state failed to demonstrate that he attempted to purposely cause the death of the victim. We find no merit to Barrow's argument.

> {¶ 14} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins,* 78 Ohio St.3d at 386, 1997–Ohio–52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} Barrow argues that because there was a struggle for the gun and it went off during that struggle, he cannot be convicted of attempted murder. He further claims that shooting the victim in the shoulder, and away from vital areas, demonstrates the Barrow had no intent to cause the death of the victim. Barrow was charged with attempted murder pursuant to R.C. 2923.02 and 2903.02(A), which in pertinent part provides that no person shall attempt to purposely cause the death of another.

{¶ 16} Whether an offender had the specific intent to kill is a fact-dependent inquiry, which can include reviewing the nature of the instrument used, the lethality of the instrument, and the manner in which the wound was inflicted. *State v. Majid,* 8th Dist. Cuyahoga No. 96855, 2012–Ohio–1192, ¶ 23, citing *State v. Pound,* 2d Dist. Montgomery No. 16834, 1998 Ohio App. LEXIS 4364, *3, 1998 WL 636996 (Sept. 18, 1998); and *State v. Robinson,* 161 Ohio St. 213, 218–219, 118 N.E.2d 517 (1954). A firearm is an inherently dangerous instrument. *Id.* The specific intent to kill may be reasonably inferred from that fact, especially when accompanied with evidence demonstrating the offender's intent to use the firearm. *Id.; see also State v. Brown,* 8th Dist. Cuyahoga No. 92814, 2010–Ohio–661, ¶ 52 (death is the natural and probable consequence of shooting a gun at someone); *State v. Wilson,* 8th Dist. Cuyahoga No. 96098, 2011–Ohio–5653, ¶ 6 (evidence that the offender fired a handgun at a police officer from close range was sufficient evidence of attempted murder despite the fact that the officer was not hit by any bullets).

{¶ 17} In construing the evidence in a light most favorable to the prosecution, the state demonstrated every element of attempted murder. A week before the shooting, Barrow threatened the victim's family by brandishing a firearm and telling them to return his missing property "or else." Shortly after assaulting the victim's younger brother, the victim confronted Justin asking for the name of the person involved in the assault. Justin called that person, and Barrow arrived with a deadly weapon. Barrow immediately confronted the victim and pointed a loaded handgun at the victim's head. The victim defended himself by trying to redirect the muzzle, but the victim's attempt at self-defense does not negate any element of attempted murder. *See Wilson.* The jury was free to infer that Barrow intended to cause the death of the victim based on Barrow's threat and subsequent actions. Any rational trier of fact could have found the essential elements of attempted murder proven beyond a reasonable doubt when considering the evidence in a light most favorable to the state. Barrow's second and final assignment of error is overruled.

*Barrow I*, 2015 WL 628358.

Petitioner argues the trial testimony does not support the allegation he purposely engaged in conduct which, if successful, would cause the death of another. (Doc. 12, at 4). Specifically, he points to testimony the victim grabbed Petitioner before he shot the victim in the shoulder – away from vital areas. *Id*. at 5; *Barrow I*, 2015 WL 628358 at ¶ 15. Petitioner argues the gun was used

"for protection and to cause fear, not to kill". (Doc. 12, at 5). Upon review of the evidence presented and the applicable law, the undersigned recommends the court find the appellate court's decision that there was sufficient evidence to uphold Petitioner's attempted murder conviction was not unreasonable.

In its ruling, the appellate court conducted a fact-specific inquiry and found the State proved every essential element of attempted murder beyond a reasonable doubt. *See Barrow I*, 2015 WL 628358 at ¶ 17. Specifically, the court addressed Petitioner's assertion that he lacked intent required to kill the victim because he shot him in the shoulder. *Id.* at ¶ 16. The court found that a firearm is an inherently dangerous weapon from which the intent to kill may be reasonably inferred. *Id.* (citing *State v Robinson*, 161 Ohio St. 213, 218–219, 118 N.E.2d 517 (1954); *State v. Brown*, 8th Dist. Cuyahoga No. 92814, 2010–Ohio–661, ¶ 52 (death is the natural and probable consequence of shooting a gun at someone)). Further, the court emphasized Petitioner's intent by noting the State presented evidence that "a week before the shooting, [Petitioner] threatened the victim's family by brandishing a firearm and telling them to return his missing property 'or else.'" *Id.*

Taking the evidence in the light most favorable to the prosecution, this is sufficient evidence from which a jury could conclude Petitioner "purposely or knowingly . . . engage[d] in conduct that, if successful, would constitute or result in the offense" O.R.C. § 2923.02(A) – the "offense" being the purposeful taking of a human life. O.R.C. § 2903.02(A). And, to the extent Petitioner is challenging the state appellate court's determination as to the evidence necessary to satisfy the elements of attempted murder under Ohio law, this Court is bound by the state court's interpretation of state law. *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002) ("'What is essential

to establish an element, like the question whether a given element is necessary, is a question of state law.'") (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).

Ultimately, a rational trier of fact could find Petitioner guilty beyond a reasonable doubt of attempted murder based on the evidence presented at trial and the state appellate court's application of the law to these facts so holding is not unreasonable. Here, Petitioner has failed to demonstrate with clear and convincing evidence that the appellate court's rejection of his sufficiency challenge was contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d). Therefore, the undersigned recommends denying Ground One as meritless.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be denied.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).